**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Scott Matthew Huggins<br><br>Debtor | Chapter 13<br><br>Case No. 23-00184-eg |
| Scott Matthew Huggins<br><br>Plaintiff(s),<br><br>v.<br><br>Louise Grant<br><br>Defendant. | Adv. Proc. No. 23-80013-eg<br><br>**AMENDED COMPLAINT POST REMOVAL TO BANKRUPTCY COURT** |

Scott Matthew Huggins (the "Plaintiff") files this Amended Complaint as an adversary proceeding in the above-captioned chapter 13 matter to hear and to resolve an ongoing dispute related to property of the Debtor's bankruptcy estate, and Plaintiff states and alleges as follows:

**JURISDICTION**

1.  The adversary proceeding arises out of and relates to the Chapter 13 case of Scott Matthew Huggins, Case No. 23-00184-eg on the docket of this Court.

2.  The matter was removed to this Court through the filing of the adversary case captioned above, Case No. 23-80013-eg.

3.  The cause of action giving rise to this adversary proceeding is an underlying state court complaint filed by the Debtor against Louise Grant for eviction from property titled in the Debtor's name and Defendant's counterclaims against the Debtor.

4.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157, and 1334.

1

5. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). To the extent that this matter is not a core proceeding, this Court has jurisdiction over this matter because it is related to the Debtor's bankruptcy Case.

6. The statutory predicates for relief are 11 U.S.C. §§ 365, 541[1], S.C. Code Ann. § 27-40-10 *et. seq.*, and S.C. Code Ann. § 29-3-10 *et. seq.*

7. The parties to this litigation appeared at a status conference on March 30, 2023, and entered into a scheduling order on April 4, 2023, at docket entry # 9 in the above adversary.

## THE PARTIES

8. The Plaintiff is an individual who lives in Charleston, SC.

9. Louise Grant ("Defendant") is the Defendant in the above-captioned action.

## FACTUAL ALLEGATIONS

10. Plaintiff asserts that he is the landlord-lessor of premises within the jurisdiction of Charleston County, which is described as a single-family residence located at 89 America Street, Charleston, SC 29403 ("Property") described more fully as follows:

> All that lot, piece or parcel of land, situate, lying and being on the west side of America Street in the City of Charleston, shown on Beckman's plan of Hampstead as part of Lot No. 30 and contained within the lines lettered ABCDA on a survey entitled "Plat of No. 89 America Street, Lettered ABCDA, in Charleston, S.C., About to be Conveyed by the City of Charleston", by J.G. Snowden, City Engineer, dated January 3, 1972, which plat was recorded in the RMC Office for Charleston County in Plat Book Q, page 20.
>
> Subject to any and all restrictions, easements and/or rights-of-way affecting the above-described property as recorded in the RMC Office for Charleston County, South Carolina.

---

[1] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, will be by section number only.

2

> Being the same property conveyed to Scott Huggins by quit claim deed of Louise Grant dated February 16, 1998 and recorded on February 17, 1998 in Book J297 Pg. 458 and Corrective General Warranty Deed dated July 23, 1998 and recorded on July 29, 1998 Book V307 Pg. 178 in the RMC Office for Charleston County, South Carolina.
> *TMS No.: 459-05-04-021*

11. The facts and Property giving rise to the claims asserted herein occurred and are located in Charleston County, South Carolina.

12. The Defendant, Louise Grant, married Andrew Grant in Charleston County on or about September 21, 1965.

13. Upon information and belief, during their marriage, Defendant and her husband acquired the Property described above.

14. Upon information and belief, the Property was encumbered by a mortgage on the Property.

15. On or about September 13, 1996, Andrew Grant passed away. **Exhibit A**.

16. According to the Certificate of Death attached as Exhibit A, Mr. Grant was married to Stella M Grant.

17. Mr. Grant had not annulled or terminated by divorce his marriage to Defendant, which preceded the marriage to Stella Grant.

18. A probate action was initiated in Charleston County to address Mr. Grant's estate as Case number 96-ES-10-1254-3.

19. The probate matter was complicated by the fact that Mr. Grant had a will that provided for the distribution to his wife, Stella Grant, without adequately considering the existence of a previous marriage to Defendant. **Exhibit B**.

3

20. On or about December 19, 1997, the mortgage creditor for the Property filed a foreclosure action styled "Fleet Mortgage Corp VS Louise Personal Representat Grant, defendant, et al." (Sic) Case No. 1997-CP 10-05667.

21. Plaintiff approached Defendant after the foreclosure was filed to offer a solution to her foreclosure issue, which was to allow him to purchase the home and take over responsibility for the payments to the mortgage creditor.

22. The agreement would require Defendant to resolve the outstanding probate issue on Property, which was to transfer Mr. Grant's interest to his heirs.

23. To that end, numerous Quitclaim deeds were executed on January 9, 1998, to, upon information and belief, terminate any possible familial interest in the Property and transfer the ownership to the Defendant. Copies of those quitclaim deeds are attached as **Exhibit C.**

24. Once this was completed, on or about January 13, 1998, Plaintiff executed, for valuable consideration, a lease with an Option to Purchase ("Lease") (**Exhibit D**) the Property located at 89 America Street, Charleston, South Carolina 29403. An excerpt of the language appears below[2].

---

[2] The document is unredacted because the account and bank no longer exist.

> It is further agreed that the sellers give the buyers the right to occupy the herein described premises subject to the following terms, stipulations and conditions to wit:
>
> The buyers shall pay to the sellers the amount as follows:
> $219 per month beginning on the 15th day of February, 1998 and $219 to be paid on or before the 15th day of each of the 360 following months. No partial payments accepted/ no prepayment accepted unless for the full term of this contract.
>
> All payments to be made by cash, certified check, cashiers check or money order payable to: Scott Huggins and deposited in account number 0768417058 set up for this purpose at Nations Bank.
>
> It is further agreed that if the buyers fulfill all the terms, conditions and stipulations mentioned herein before, the sellers give the buyers the right to purchase the herein described real estate for the sum of $10 (ten dollars) plus all closing costs and other expenses incidental to the purchase of aforesaid real estate including, but not limited to maintenance costs, improvement costs, and legal fees and subject to an existing mortgage in favor of Fleet Mortgage Corp. which balance was approximately $7,961.34 on January , 1998.

25. On February 16, 1998, Defendant granted a deed in favor of Plaintiff, which was recorded in Charleston County on February 17, 1998, at Book J297 Page 458, and is attached hereto as **Exhibit E.**

26. Plaintiff, when he approached Defendant, had just graduated from the College of Charleston with a degree in biology and chemistry and was attending Trident Tech for medical ultrasound training.

27. On or about July 23, 1998, Steven Rubinstein, an attorney in Charleston, SC, prepared an affidavit for recording a deed from Louise Grant in favor of the Plaintiff. See **Exhibit F**.

28. Pursuant to the Lease, Defendant would pay a monthly rental fee of $219.00 for a term of 360 months, due on the 15th of each month, and no prepayment was allowed.

29. At the time of the Lease, this rate was below market.

30. During the subsequent 18 years, the rental fee fell further and further below market as rental rates rose in the Charleston region.

5

31. On or about October 15, 1998, Defendant missed her rent payment. Mr. Huggins sent a letter to the Defendant giving her five days' notice to pay the amount due. This letter served as the 5-day notice required under the South Carolina Residential Landlord and Tenant Act (**Exhibit G**).

32. Ms. Grant continued to make payments on the Lease at the rate of $219.00 through July 2016.

33. On April 15, 2013, Ms. Grant filed a Chapter 13 bankruptcy with the help of a bankruptcy attorney.

34. The bankruptcy, Case No. 13-02221-jw, was fully administered, and Ms. Grant received a discharge on or about August 23, 2016.

35. Ms. Grant listed her address on the bankruptcy petition as the America Street address that is the subject of this litigation.

36. An excerpt of this address appears below and is included in **Exhibit H** attached hereto.

| Case 13-02221-jw    Doc 1    Filed 04/15/13    Entered 04/15/13 14:16:30    Desc Main Document    Page 1 of 46 |
|---|

B1 (Official Form 1)(04/13)

| United States Bankruptcy Court<br>District of South Carolina | Voluntary Petition |
|---|---|
| Name of Debtor (if individual, enter Last, First, Middle):<br>**Grant, Louise Coleman** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names):<br>**AKA Louise C. Grant; AKA Louise Grant** | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if more than one, state all)<br>**xxx-xx-6756** | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State):<br>**89 America Street**<br>**Charleston, SC**<br>ZIP Code **29403-5623** | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP Code |

37. Ms. Grant's petition included her bankruptcy schedules and incorporated a list of her assets and other required disclosures at docket entry 1 in her bankruptcy.

38. One of the required disclosures is the disclosure of any real property ownership interests, and the disclosures appear on page 8 of Schedule A. An excerpt from that page below shows that Ms. Grant declared no real property assets.

| In re | Louise Coleman Grant | Case No. |
|---|---|---|
| | Debtor | |

**SCHEDULE A - REAL PROPERTY**

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim." If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| None | | | | |

39. On schedule C of Ms. Grant's schedules, she did not declare any exemption in real property.

7

**SCHEDULE C - PROPERTY CLAIMED AS EXEMPT**

Debtor claims the exemptions to which debtor is entitled under:
(Check one box)
☐ 11 U.S.C. §522(b)(2)
■ 11 U.S.C. §522(b)(3)

☐ Check if debtor claims a homestead exemption that exceeds $155,675. *(Amount subject to adjustment on 4/1/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.)*

| Description of Property | Specify Law Providing Each Exemption | Value of Claimed Exemption | Current Value of Property Without Deducting Exemption |
|---|---|---|---|
| **Cash on Hand** | | | |
| Cash | S.C. Code Ann. § 15-41-30(A)(5) | 18.00 | 18.00 |
| **Checking, Savings, or Other Financial Accounts, Certificates of Deposit** | | | |
| Wells Fargo Account | S.C. Code Ann. § 15-41-30(A)(5) | 5.00 | 5.00 |
| **Household Goods and Furnishings** | | | |
| Living room, bedroom furniture, kitchen items, and other miscellaneous household items. | S.C. Code Ann. § 15-41-30(A)(3) | 300.00 | 300.00 |
| tv, ac unit, vaccum cleaner | S.C. Code Ann. § 15-41-30(A)(3) | 150.00 | 150.00 |
| **Wearing Apparel** | | | |
| Assorted Clothing Items. | S.C. Code Ann. § 15-41-30(A)(3) | 100.00 | 100.00 |
| **Furs and Jewelry** | | | |
| costume jewelry | S.C. Code Ann. § 15-41-30(A)(4) | 100.00 | 100.00 |
| **Interests in Insurance Policies** | | | |
| ING Employee Benefits P. O. Box 20, RT 6871 Mineapolis, MN 55440 WHOLE LIFE Insurance | S.C. Code Ann. § 38-63-40(A) | 77.00 | 77.00 |

40. Where Ms. Grant was required to disclose her executory contracts, such as a lease, on schedule G, she failed to disclose any lease between herself and the Plaintiff.

In re  Louise Coleman Grant , Case No. _____
         Debtor

**SCHEDULE G - EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser", "Agent", etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described. If a minor child is a party to one of the leases or contracts, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
|---|---|

41.   On Ms. Grant's disclosure of her expenses on schedule J, she disclosed that she paid $219 a month for rent or home mortgage and indicated that there were no taxes or insurance included in the amount, and made no allowances for any taxes or insurance related to the Property anywhere in schedule J.

8

> Case 13-02221-jw    Doc 1    Filed 04/15/13    Entered 04/15/13 14:16:30    Desc Main
> Document    Page 22 of 46
>
> B6J (Official Form 6J) (12/07)
> In re   **Louise Coleman Grant**                                              Case No. _____
>                              Debtor(s)
>
> **SCHEDULE J - CURRENT EXPENDITURES OF INDIVIDUAL DEBTOR(S)**
>
> Complete this schedule by estimating the average or projected monthly expenses of the debtor and the debtor's family at time case filed. Prorate any payments made bi-weekly, quarterly, semi-annually, or annually to show monthly rate. The average monthly expenses calculated on this form may differ from the deductions from income allowed on Form 22A or 22C.
>
> ☐ Check this box if a joint petition is filed and debtor's spouse maintains a separate household. Complete a separate schedule of expenditures labeled "Spouse."
>
> 1. Rent or home mortgage payment (include lot rented for mobile home)                                    $        219.00
>    a. Are real estate taxes included?             Yes ___     No  X
>    b. Is property insurance included?             Yes ___     No  X
> 2. Utilities:   a. Electricity and heating fuel                                                          $        320.00
>                 b. Water and sewer                                                                       $         65.00

42.      On April 15, 2013, Ms. Grant filed a Chapter 13 Plan ("Plan") which was later approved on June 7, 2013. See **Exhibit I**.

43.  The Plan contained the following provisions:

> D. <u>Assumption or Rejection of Executory Contract/Unexpired Lease</u>: The debtor moves for the assumption of the following executory contract and/or unexpired lease. The debtor agrees to abide by all terms of the agreement and to cure any pre-petition arrearage or default in the manner below. Any executory contract or unexpired lease not specifically mentioned is rejected.
>
> | Name of Creditor and lease or contract to be assumed | Amount of regular payment | Estimated amount of Default (state if none) | Cure Provisions for any default paid by (Debtor or trustee) | Regular payments to be paid by Debtor directly to creditor beginning (month/year) |
> |---|---|---|---|---|
> | -NONE- | | | | |

44.      The language in Section II of the Plan that was the standard plan at the time of confirmation for the District of South Carolina rejected any executory contracts that were not affirmatively assumed at the time of confirmation.

45.      Further, the Plan has no provisions for treating or dealing with a secured claim or property which the Debtor might claim under color of law or equity.

46.      Additionally, no notice was provided to the Plaintiff of Ms. Grant's bankruptcy to allow him to appear in the bankruptcy and address his rights. A copy of the final list of creditors is attached as **Exhibit J**.

47. During Ms. Grant's bankruptcy, she was questioned under oath at the first meeting of creditors and provided the following testimony indicating that she did not own real property, See **Exhibit K** attached hereto for the full transcript.

```
 9        THE COURT:  Have you transferred any assets
10   to any family members within the last six years?
11        THE WITNESS:  No.
12        THE COURT:  And you have no real property?
13        THE WITNESS:  Nothing.
14        THE COURT:  No heirs property?
15        THE WITNESS:  Huh-uh.
16        THE COURT:  You're not living on land that
17   you're part of?
18        THE WITNESS:  No.
```

48. Lacking notice of the pending bankruptcy, on or about June 28, 2016, Mr. Huggins and Ms. Grant amended the Lease to increase the rent payment to $860.00 per month ("Addendum") **(Exhibit L)**.

49. This increase in rent charged through the Addendum was still below market at the time and was the minimum amount the Plaintiff believed he could charge and continue to afford to pay the expenses related to the Property.

50. It appears that at the time the Lease was amended between Plaintiff and Defendant the Lease was terminated by operation of Ms. Grant's rejection through of her Chapter 13 Plan.

51. On October 9, 2019, after multiple attempts to discuss with Ms. Grant, Mr. Huggins sent a letter notifying Ms. Grant of her failure to pay rent for July, August, September, or October. The letter also provided notice to the Defendant that according to

10

the terms of the Lease, the Lease was now terminated and requested that she vacate the Property (**Exhibit M**).

52. On or about July 13, 2020, Mr. Huggins filed this action as an application for ejectment pursuant to S.C. Code §27-37-10 for failure to pay rent in the Charleston County Magistrate's Court.

53. The matter was later removed to the Master in Equity for Charleston County.

54. To date, Ms. Grant remains in the property and has not paid rent since June 2019.

55. As of the date of this pleading, Ms. Grant has accrued an arrearage of $39,560 in rent.

56. Defendant agreed to the terms that, in the event of default, the Lease with the Option to Purchase would become null and void, that Defendant would surrender possession of the Property to Plaintiff, and that Plaintiff would retain all amounts paid by Defendant.

57. Plaintiff is informed and believes that Defendant is not entitled to exercise her option to purchase under the Lease.

58. If the option were to be exercised as of the date of this pleading, Defendant would be required to pay various costs incurred since the Lease was agreed to and fulfill the remaining term. Those costs are as follows:

   a. Future rent of $49,880 (58 months remaining),

   b. Original purchase costs of $12,256,

   c. Legal fees billed to date of $45,270,

    d. Other expenses (taxes, insurance) $68,977.08, and

    e. Unpaid rent of $36,560.

Total: $215,943.17

59. Further, upon information and belief, at no point did Defendant manifest or perform under the Lease option such that ownership of the Property was required to be transferred.

60. Plaintiff has been forced to carry the burden of this Property without relief since July of 2019.

61. The costs related to the Property and unrecouped payments from the Defendant are a significant contributing event to the Plaintiff's bankruptcy filing.

## FOR A FIRST CAUSE OF ACTION

*(Action for Possession Pursuant to S.C. Code §27-40-10, et al.)*

62. Plaintiff restates and incorporates the previous paragraphs as if included herein verbatim.

63. Plaintiff asserts that the Lease or the Addendum are governed by the South Carolina Residential Landlord and Tenant Act, S.C. Code Ann. § §27-40-10, et seq.

64. On or about January 13, 1998, Plaintiff and Defendant executed the Lease, a contract with a title "option to repurchase" that was to be a long-term lease of real property to the Defendant.

65. The Lease contains an option for Defendant to purchase the Property according to the terms of that agreement, which among other things requires Defendant to make all payments under the Lease, and other expenses that Plaintiff incurred while the Lease was in effect.

66. The Defendant defaulted under the Lease in the fall of 1998.

67. On or about October 15, 1998, Mr. Huggins provided notice to Ms. Grant as required under the South Carolina Landlord Tenancy Act notifying her of this default pursuant to S.C. Code §27-40-710 and that she was required to pay rent within five days of the due date, or she would be subject to termination of the Lease.

68. Defendant file for protection under chapter 13 of the bankruptcy code and failed to list any interest in the subject Property on her bankruptcy schedules.

69. On or about June 7, 2013, Defendant's plan of reorganization was confirmed.

70. The confirmed plan rejected any executory contracts she may have been subject to, terminating the Lease.

71. Plaintiff was without knowledge of the bankruptcy filed by the Defendant or the Plan treatment.

72. On June 28, 2016, the parties entered into the Addendum, which increased the rent charged under the Lease.

73. Plaintiff asserts that this Addendum provided benefits to both parties as it would ultimately reduce the burden on Plaintiff to carry costs that Defendant would otherwise have to pay if she exercised the Lease option.

74. After making regular payments under the Addendum for approximately three years, Defendant ceased making payments in July of 2019.

75. Additionally, no payments were made for August, September, and October.

76. On or about October 9, 2019, Mr. Huggins provided notice to Ms. Grant terminating the Lease and the Addendum for failure to pay rent.

77. Defendant has materially breached the terms of the Lease, and as such, the Landlord is entitled to terminate the Lease and remove the Lessee from the premises.

78. Plaintiff further states that pursuant to the Residential Lease Agreement and S.C. Code § 27-40-710, Plaintiff is entitled to terminate the Lease and evict Defendant due to failure to pay rent.

79. That pursuant to SC Code § 27-40-710 (C) and due to the Defendant's above-stated actions and willful conduct, Mr. Higgins is entitled to recover attorney's fees in this matter.

## FOR A SECOND CAUSE OF ACTION

*(Foreclosure)*

80. Plaintiff restates and realleges every allegation set for above as if stated herein verbatim.

81. As of April 15, 2023, the Defendant was due and owing to Mr. Huggins the sum of $215,943.17 together with attorney's fees and costs of this action.

82. Plaintiff, as the legal title holder of the subject real property, has a lien for the value of the unpaid portion of the Lease option, currently $215,943.17 .

83. Defendant may claim some interest in the subject of the property.

84. By reason of Defendant's default of the Lease and termination of the Lease, Plaintiff is entitled to foreclosure the Defendant's interest in the Property, if any, and Plaintiff has exercised his option to foreclose on the Property and declare the whole amount due.

85. Upon information and belief, the Property that is the subject of this action has not been taken for tax, fine, or assessment, pursuant to any statute, or seized by virtue of an execution or attachment against the property of the Plaintiff or Defendant.

86. Plaintiff would assert that, if the Lease is not held to be a lease, the reasonable alternative form of the document is to serve as a mortgage or equitable mortgage on the Property, which is to serve as security for the amounts due to Plaintiff.

87. If this is determined to be a mortgage of some sort, then Plaintiff would assert that he is entitled to foreclose on the Property to terminate the interest of Defendant based on the amounts which remain unpaid to him of $215,943.17 .

88. Plaintiff would be entitled to a mortgage that is inferior to the already recorded liens of record on the Property.

## FOR A THIRD CAUSE OF ACTION

(Breach of Contract)

89. Plaintiff restates and realleges every allegation set for above as if stated herein verbatim.

90. That the contract by which Defendant leased the Property on January 13, 1998, in exchange for valuable consideration, is a valid, binding, and enforceable contract between Plaintiff and Defendant.

91. The Lease appears to be what is called a land sale contract that required the Defendant to make regular payments under the enacting document,

92. Pursuant to the Lease, Defendant would pay a monthly rental fee of $219.00 for a term of 360 months, due on the 15th of each month.

93. On or about October 15, 1998, Defendant missed her rent payment. Mr. Huggins sent a letter to the Defendant giving her five days' notice to pay the amount due. This letter served as the 5-day notice required under the South Carolina Residential Landlord and Tenant Act.

94. Defendant recommenced paying her monthly rental payments.

95. On or about June 7, 2013, Defendant confirmed a Chapter 13 plan which rejected any executory contracts to which Defendant may be subject to at the time.

96. Plaintiff was not offered an opportunity to participate in the Defendant's bankruptcy because he was not provided notice of the bankruptcy proceedings.

97. On or about June 28, 2016, Mr. Huggins and Ms. Grant amended the Lease to increase the rent due to $860.00 per month.

98. Ms. Grant commenced paying rent in the amount of $860.00 per month through June 2019 and then abruptly stopped.

99. On October 9, 2019, after multiple attempts to discuss with Ms. Grant, Mr. Huggins sent a letter notifying Ms. Grant of her failure to pay rent for the months of July, August, September, or October. The letter also notified the Defendant that under the terms of the Lease, the Lease was terminated and Defendant was asked to vacate.

100. It is unclear what effect this Addendum had on the Lease since it was an addendum to an executory contract rejected by way of the bankruptcy.

101. Plaintiff would assert no lease was in effect and could not be amended or supplemented due to this rejection by the Defendant's bankruptcy.

102. Defendant knowingly failed to convey to Plaintiff the monthly payments required under the terms of the Lease, or the Addendum, thereby breaching the contract Defendant had with Plaintiff.

103. Further, the Lease requires that the Defendant not only make the regular payments to Plaintiff, but the also requires that the Defendant make all 360 payments, and then pay Plaintiff his costs and expenses, a figure that is now in excess of $215,000.

104. As a proximate result of Defendant's breach of the Lease and the Addendum with Plaintiff, Plaintiff has suffered an economic injury and damages.

**FOR A FOURTH CAUSE OF ACTION**

(Estoppel)

105. Plaintiff restates and realleges every allegation set for above as if stated herein verbatim.

106. Defendant filed a Chapter 13 bankruptcy in 2013, whereby she was required under penalty of perjury to list her assets, liabilities, and executory contracts.

107. When she filed her bankruptcy, the Lease between Plaintiff and Defendant was in effect.

108. Plaintiff asserts that Lease is an executory contract that would have been required to list on Schedule H of the schedules filed by Defendant.

109. Defendant did not list the Property on Schedule H.

110. Neither did Defendant list the Property on Schedule A or B of the bankruptcy schedules.

111. The Property interest was not disclosed on the Schedules in any meaningful manner.

112. Ms. Grant was required to list any interest she had in the house as an owner, prospective owner, leaseholder, or optionee to allow her creditors and the Chapter 13 trustee an opportunity to determine if the asset had value that could be used to repay Defendant's creditors.

113. By failing to list such assets or leases, Defendant should be estopped from asserting an interest in the property now that her bankruptcy is complete and was closed more than seven years ago.

114. Further, in the first meeting of creditors, when Ms. Grant was asked under oath to confirm that she had no real property she replied that she had "nothing."

115. As such, Plaintiff would assert that Defendant is estopped from asserting that she has an ownership interest in the Property.

WHEREFORE, Movant respectfully requests that after such notice and hearing as this Court deems appropriate, the Court enter an order finding that Plaintiff is the true owner of the property, that Defendant has no right or interest in the property, and to allow for Plaintiff to evict and proceed with the state court remedies to remove Defendant from the Property and to award any additional relief as the Court may deem proper.

**Markham Law Firm, LLC**

April 14, 2023

  /s/Sean Markham  
Sean Markham, I.D. # 10145
Attorney for the Plaintiff Scott Huggins
P.O. Box 101
Mount Pleasant, SC 29465
Tel: 843-284-3646
sean@markhamlawsc.com

1