**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Scott Matthew Huggins<br><br>Debtor | Chapter 13<br><br>Case No. 23-00184-eg |
| Scott Matthew Huggins<br><br>Plaintiff(s),<br><br>v.<br><br>Louise Grant<br><br>Defendant. | Adv. Proc. No. 23-80013-eg<br><br>**RESPONSES TO COUNTERCLAIMS ALLEGED BY DEFENDANT AND AFFIRMATIVE DEFENSES** |

Plaintiff, Scott Matthew Huggins (the "Plaintiff"), files these answers to the counter claims alleged in the Defendant's responsive pleading filed on April 27, 2023.

Plaintiff realleges the paragraphs of his Amended Complaint[1] filed on April 14, 2023, as fully set forth verbatim herein. Plaintiff's responses below pick up with the Defendant's First Counter Claim appearing on Page 18 of the pleading filed on April 27, 2023.

1. Plaintiff restates and incorporates the paragraphs of his Amended Complaint as if included herein verbatim.

2. Paragraph 2 does not appear to be directed at Defendant and as such no answer is required. To the extent a response is required Plaintiff would deny those allegations and demand strict proof thereof.

---

[1] Capitalized terms herein may reference already defined terms set out in the Plaintiff's Amended Complaint filed on April 14, 2023.

1

3. Plaintiff is unsure if Defendant's financial distress was caused by the death of her husband. Plaintiff did approach Defendant at her home and the contact was unsolicited. Defendant is unsure of exactly what was said at the meeting between the parties more than 20 years ago but does not agree that he would have ever said he was her "guardian angel."

4. Plaintiff answers paragraph 4 by admitting that he is currently a real estate broker. Plaintiff further admits he is listed as an expert in residential real estate but denies the implication in the structure of paragraph 4 of the Defendant's counter claims that appears to place these present-day facts of his real estate experience into the historical period when Plaintiff approached Defendant. Defendant was not a realtor or an expert at the time he approached Defendant in or around 1998. Plaintiff further denies that he approached the Defendant to "help her with her financial problems." Plaintiff's only interaction with Defendant on her finances was to enter into the lease purchase option mentioned previously in the Amended Complaint.

5. Plaintiff responds to paragraph 5 by denying that the balance at the time he approached Defendant was $7,500. Plaintiff believes the figure was closer to $12,000.

6. Plaintiff answers paragraph 6 by admitting that he was aware of the foreclosure and believes he was aware of the balance owed to the mortgage company in total but is unsure if he knew what was required to reinstate the mortgage. Plaintiff would deny that those figures were as low as mentioned by Defendant in paragraph 5 above.

7. Plaintiff would deny the allegations in paragraph 7 as vague and unclear as to the specific time period Defendant asserts Plaintiff had this knowledge, how to measure Defendant's sophistication (or lack thereof), or in what way she was suffering from a

vulnerability in 1998. Plaintiff would assert that if the assertion is that the Defendant was financially incompetent at the time of this transaction, Plaintiff believes that assertion to be false and that the Defendant was the treasurer of her church from 1992 until COVID started. Plaintiff further denies that he requested Defendant deed him the property as security for a loan. Defendant has acknowledged in a notarized statement that she understood that this transaction at issue here was not a loan.

8. Plaintiff answers paragraph 8 by denying that he drafted the repurchase agreement. The agreement was a form from a course he took and only filled in the blanks and modified the document where needed to make sense with this situation. Plaintiff cannot recall what precisely was said in his various meetings with the Defendant more than 20 years ago but does not believe that he told her the repurchase agreement was the only way to save her home.

9. Plaintiff denies the allegations contained in paragraph 9 that Defendant relied on his representations or that she did not understand the documents she executed. Defendant had months to consider the transaction and discuss with family before finally completing the transaction. At any time Defendant had the opportunity to seek help with understanding the transaction if she was confused or did not understand the terms.

10. Plaintiff denies the assertions contained in paragraph 10 that the agreement was a mortgage refinance. Plaintiff is unaware if Defendant was or was not represented by counsel. Plaintiff asserts that he prepared the repurchase agreement but would crave reference to any other documents which Defendant asserts he prepared as part of this transaction. Plaintiff would deny any other unanswered assertions in paragraph 10 not specifically addressed in this response.

11. Plaintiff denies that the agreement was outrageous or unconscionable. Plaintiff asserts that the payment of $219 a month was far below market and did not cover the ongoing costs that Plaintiff had to pay during the intervening decades. Plaintiff has spent far more than $78,840 to pay for the house expenses over the past 25 years. Further, the agreement requires that the Defendant pay those expenses in order to exercise the option to repurchase the house.

12. Plaintiff denies the allegations in paragraph 12. Plaintiff was not a real estate expert or a realtor at the time he met with Defendant and only achieved those designations many years later. Plaintiff, at the time he met with Defendant, was a recently graduated college student working on a post-secondary education. Plaintiff denies the remaining allegations in paragraph 12.

13. Plaintiff denies the allegations contained in paragraph 13. Plaintiff specifically told Defendant that she would need to clean up the probate estate issues otherwise the transaction could not go forward. Defendant then undertook this effort to address the estate issues. Plaintiff does admit that he served as a witness on the deed of distribution but denies that he had a personal interest in the transaction.

14. Plaintiff admits paragraph 14.

15. Plaintiff denies the allegations in paragraph 15 and demands strict proof thereof.

16. Plaintiff admits that Defendant made the payments under the Repurchase Agreement until June 2016 but would assert that there was a missed payment that was later cured by the Defendant.

4

17. Plaintiff admits that he came to the Defendant's house but did so after contacting her by phone and setting up an appointment to meet with her, her daughter, and with Plaintiff's wife also present. Plaintiff admits that he requested a payment increase to cover increased costs for the house but denies all other allegations in paragraph 17.

18. Plaintiff admits that he prepared an amendment to the Repurchase Agreement but denies the remaining assertions in paragraph 18.

19. Plaintiff is unable to answer what the Defendant believed and as such does not believe an answer to paragraph 19 is required. To the extent there are allegations that need to be addressed they are denied.

20. Plaintiff admits that Defendant paid $860 a month until June of 2019. Plaintiff denies all other allegations in paragraph 20.

21. Plaintiff admits that he believes was late in paying taxes on the house on two occasions, but before he could pay those late taxes, they were paid by the Defendant. Plaintiff denies all other allegations in paragraph 21.

22. Paragraph 22 does not appear to be directed at Plaintiff and as such no answer is required.

23. Plaintiff denies that the allegations contained in paragraph 23 were the first time the repurchase agreement was referenced as a lease. Plaintiff has repeatedly referenced this agreement as a lease. This is clear from the notice of default sent to Defendant on October 15, 1998, and the amendment to the option to repurchase dated June 28, 2016. Plaintiff admits that he again informed the Defendant, through pro bono counsel, that she was in default, and that she would have to now pay $2,000 a month.

24. The allegations contained in paragraph 24 are admitted.

25. The allegations contained in paragraph 25 are admitted.

26. The allegations contained in paragraph 26 are admitted.

27. The allegations contained in paragraph 27 are admitted.

28. Plaintiff denies the allegations contained in paragraph 28 and would demand strict proof thereof.

29. Plaintiff denies the allegations contained in paragraph 29 and would demand strict proof thereof.

30. Plaintiff denies the allegations contained in paragraph 30 and would demand strict proof thereof.

31. Plaintiff denies the allegations in paragraph 31. Plaintiff is unable to answer what Defendant did or did not rely on at time of the transaction, but Plaintiff disagrees that Defendant did not understand the transaction in 1998.

32. Plaintiff denies the allegations in paragraph 32 and would demand strict proof thereof.

33. Plaintiff denies the allegations contained in paragraph 33 and would demand strict proof thereof.

34. Plaintiff denies the allegations contained in paragraph 34 and would demand strict proof thereof.

35. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

36. Plaintiff denies the allegations contained in paragraph 36 and would demand strict proof thereof.

37. Plaintiff denies the allegations contained in paragraph 37 and would demand strict proof thereof.

38. Plaintiff denies the allegations contained in paragraph 38.

39. Plaintiff denies the allegations contained in paragraph 39.

40. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

41. Plaintiff denies the allegations contained in paragraph 41.

42. Plaintiff denies the allegations contained in paragraph 42.

43. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

44. Plaintiff denies the allegations contained in paragraph 44.

45. Plaintiff denies the allegations contained in paragraph 45.

46. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

47. Plaintiff denies the allegations contained in paragraph 47.

48. Plaintiff denies the allegations contained in paragraph 48.

49. Plaintiff denies the allegations contained in paragraph 49.

50. Plaintiff denies the allegations contained in paragraph 50.

## For a First Affirmative Defense

51. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

52. Plaintiff asserts that the Defendant's counterclaims are barred by various statute of limitations as appliable for each cause of action including but not limited to the specific ones outlined below.

53. Specifically, the facts giving rise to the Defendant's first cause of action date back to 1998 and the South Carolina Statute of limitations on fraud set out under S.C. Code Ann. § **15-3-530** is limited to 3 years.

54. The Defendant's second cause of action Unfair Trade Practices Act has a statute of limitations of 3 years, see S.C. Code Ann. § **39-5-150.**

55. The Defendant's third cause of action, breach of contract falls under the limitations imposed under S.C. Code Ann. § **15-3-530**, which, again, is 3 years.

56. The Defendant's fourth cause of action, equitable mortgage is barred under the statute of limitations pursuant to S.C. Code Ann. **15-3-340** and **SECTION 15-3-350**.

57. Defendants fifth[2] court counter claim, unjust enrichment, is barred under statute of limitations pursuant to S.C. Code Ann. § **15-3-530**.

### For a Second Affirmative Defense

58. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

59. Any liability to Defendant, which is denied, must be reduced or eliminated under the doctrines of setoff, recoupment, and contribution.

### For a Third Affirmative Defense

---

[2] The pleading filed on April 27, 2023, mistakenly lists the unjust enrichment as a fourth counterclaim, but it appears that it should have been described as the fifth counterclaim as four other counter claims were already plead before this counter claim.

8

60. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

61. Plaintiff previously pled that the Defendant is estopped by her previous conduct in her chapter 13 bankruptcy from asserting these counterclaims and to the extent that cause of action should be an affirmative defense, Plaintiff asserts that defense here.

62. Defendant filed a Chapter 13 bankruptcy in 2013, whereby she was required under penalty of perjury to list her assets, liabilities, and executory contracts.

63. When she filed her bankruptcy, the Lease between Plaintiff and Defendant was in effect.

64. Plaintiff asserts that Lease is an executory contract that would have been required to list on Schedule H of the schedules filed by Defendant.

65. Defendant did not list the Property on Schedule H.

66. Neither did Defendant list the Property on Schedule A or B of the bankruptcy schedules.

67. The Property interest was not disclosed on the Schedules in any meaningful manner.

68. Ms. Grant was required to list any interest she had in the house as an owner, prospective owner, leaseholder, or optionee to allow her creditors and the Chapter 13 trustee an opportunity to determine if the asset had value that could be used to repay Defendant's creditors.

69. By failing to list such assets or leases, Defendant should be estopped from asserting an interest in the property now that her bankruptcy is complete and was closed more than seven years ago.

70. Further, in the first meeting of creditors, when Ms. Grant was asked under oath to confirm that she had no real property she replied that she had "nothing."

71. As such, Plaintiff would assert that Defendant is estopped from asserting that she has an ownership interest in the Property.

### For a Fourth Affirmative Defense

72. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

73. Based on the Debtor's actions and conduct, Plaintiff pleads all applicable equitable defenses including, but not limited to, doctrines of laches, waiver, estoppel, and unclean hands in bar or limitation of the Debtor's claims and asserted damages.

### For a Fifth Affirmative Defense

74. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

75. The claims asserted by Debtor are barred by the doctrines of acquiescence and ratification.

### For a Sixth Defense

76. Plaintiff reincorporates all the above paragraphs of this answer as fully set forth verbatim herein.

77. The allegations contained in the counter claims of the Defendant fail to state a claim upon which relief can be granted.

WHEREFORE, Movant respectfully requests that after such notice and hearing as this Court deems appropriate, the Court enter an order finding that Plaintiff is the true

owner of the property, that Defendant has no right or interest in the property, denying any and all counter claims of the Defendant, and to allow for Plaintiff to evict and proceed with the state court remedies to remove Defendant from the Property and to award any additional relief as the Court may deem proper.

                                                               **Markham Law Firm, LLC**

May 11, 2023                                                         /s/Sean Markham
                                                                 Sean Markham, I.D. # 10145
                                                                 Attorney for the Plaintiff Scott Huggins
                                                                 P.O. Box 101
                                                                 Mount Pleasant, SC 29465
                                                                 Tel: 843-284-3646
                                                                 sean@markhamlawsc.com